## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | |
|---|---|
| Robert Stoczynski, ) | |
| ) | Case No. 18-cv-50403 |
| Plaintiff, ) | |
| ) | COMPLAINT FOR VIOLATIONS OF |
| ) | THE AMERICANS WITH |
| v. ) | DISABILITIES ACT |
| ) | |
| Tyson Foods, Inc., ) | |
| ) | JURY DEMANDED |
| Defendant. ) | |

## COMPLAINT

Now comes Plaintiff Robert Stoczynski (hereinafter "Stoczynski"), by and through counsel, and, against Defendant Tyson Foods, Inc. (hereinafter "Tyson"), complains as follows:

### Jurisdiction, Venue, and Parties

1.      This case arises under the Americans with Disabilities Act of 1990 (hereinafter the "ADA"), as amended, codified at 42 U.S.C. § 12101, *et seq.* Accordingly, this Court has jurisdiction to hear this case pursuant to 28 U.S.C. §1331 (federal question jurisdiction).

2.      Stoczynski was employed by Tyson from about April 18, 2016 until early 2017. He worked at Tyson's plant in Rochelle, Illinois.

3.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(1) and §(b)(2) because Tyson resides in and does business within this District and the acts and omissions that Stoczynski complains of occurred within this District (at Tyson's Rochelle, IL plant).

### Relevant Facts

4.      Stoczynski has autism.

5.      Stoczynski suffered from rickets as a child, which left him with deformities that he still has today.

1

6.  Stoczynski also has severe anxiety, depression, and post-traumatic stress disorder.

7.  His conditions substantially limit one or more of his major life activities, including sleeping, concentrating, thinking, and communicating.

8.  Additionally, his conditions substantially limit the operation of one or more of his major bodily functions, including his brain function and his bladder function.

9.  During Stoczynski's employment, Tyson was aware that Stoczynski had these conditions.

10.  During Stoczynski's employment, Tyson supervisors and co-workers harassed Stoczynski frequently because of his conditions, because they regarded him as having a disability, because he had reported harassment to Tyson, and/or in an effort to interfere with the exercise and enjoyment of his rights under the ADA.

11.  This harassment generally occurred on the night shift—which was Stoczynski's regular shift.

12.  This harassment included, but was not limited to:

   a.  calling Stoczynski a "retard";

   b.  calling Stoczynski "down syndrome boy";

   c.  calling Stoczynski "disability boy";

   d.  using other disability-related slurs;

   e.  telling Stoczynski that he looked like an alien;

   f.  mocking Stoczynski's deformities;

   g.  mocking Stoczynski by using various gestures;

   h.  mocking Stoczynski by making various noises;

   i.  using disability-related innuendos to mock Stoczynski;

   j.  making fun of Stoczynski;

k.   laughing at Stoczynski;

l.   attempting to provoke Stoczynski and get a reaction out of him;

m.  interfering with Stoczynski's work assignments; and

n.  threatening Stoczynski.

13.     Some of the harassment occurred out in the open at Tyson and was observed by others.

14.     Stoczynski reported the harassment to Tyson managers/supervisors, to Tyson human resources employees, and to other Tyson employees.

15.     The harassment only became more severe after Stoczynski reported it.

16.     Stoczynski also asked Tyson to separate him from the harassers—either by transferring him to another shift or by transferring him to another Tyson plant in the area.

17.     Tyson did not transfer Stoczynski to another shift.

18.     Tyson did not transfer Stoczynski to another plant in the area.

19.     On information and belief, work was available for Stoczynski on another shift.

20.     On information and belief, work was available for Stoczynski at another plant in the area.

21.     The harassment occasionally triggered severe symptoms of Stoczynski's conditions, including panic attacks, crying, nosebleeds, nausea, vomiting, and loss of normal bladder functioning.

22.     Stoczynski occasionally required—and asked for—time off because of the severe symptoms that the harassment triggered.

23.     For example, on days that the harassment triggered severe symptoms of his conditions, Stoczynski occasionally needed to leave work and go home for the day.

24.     Although Tyson allowed Stoczynski to take limited time off on these occasions, they penalized him for doing so—his supervisors gave him attendance points (despite one supervisor telling him that Tyson would not do so).

25.     At Tyson's Rochelle, IL plant, if employees accumulate enough attendance points, they are terminated.

26.     As a result of the harassment and Tyson's actions and inactions, Stoczynski suffered severely and was eventually forced to take a leave of absence.

27.     Stoczynski never returned from this leave of absence (because he would have been required to return to his former position and work with his harassers).

28.     At all relevant times, Stoczynski was qualified to perform his job at Tyson.

29.     At all relevant times, Stoczynski was able to perform the essential functions of his job at Tyson with a reasonable accommodation (separation from the harassers and/or reasonably unimpeded intermittent leave when experiencing severe symptoms of his conditions).

30.     Stoczynski has exhausted his administrative remedies.

## COUNT I: Discrimination Under the ADA

31.     Stoczynski re-alleges paragraphs one through thirty as if fully alleged here.

32.     Stoczynski was, at all relevant times, a qualified individual with a disability, as that term is defined by the ADA.

33.     Stoczynski was subjected to unwelcome harassment, as more fully described above.

34.     The harassment occurred because Stoczynski had a disability and/or because he was regarded as having a disability.

35.     The harassment was severe or pervasive enough that a reasonable person in Stoczynski's position would find Stoczynski's work environment to be hostile or abusive.

36.    At the time the harassment occurred, Stoczynski believed that it made his work environment hostile or abusive.

37.    Tyson knew of the harassment or should have known about it, but failed to take reasonable steps to correct or prevent it.

38.    Tyson failed to separate him from the harassers and penalized him for taking time off when he needed it due to symptoms triggered by the harassment.

39.    As a result, Stoczynski suffered severely and was forced to take a leave of absence from which he could not return, given that he would have been required to go back to working with the harassers.

40.    Tyson's actions and inactions violated the ADA.

41.    These violations were intentional and willful.

42.    Stoczynski has been harmed by Tyson's violations of federal law—he suffered severe symptoms of his conditions; he has lost wages, benefits, and earning power; and he has suffered severe emotional distress, which still continues.

43.    Stoczynski had to retain an attorney to pursue claims based on these violations.

44.    Tyson's conduct was in reckless disregard of Stoczynski's rights. Therefore, Stoczynski requests punitive damages to punish Tyson and to deter Tyson and other companies from engaging in similar discriminatory conduct in the future.

WHEREFORE, Plaintiff requests that Defendant be held liable; and that he be awarded all damages to which he is entitled, including compensatory damages (for physical and mental pain and suffering), punitive damages, back pay and lost benefits, prejudgment interest on back pay and lost benefits, reinstatement or front pay, other injunctive relief, other equitable relief including a tax component, attorneys' fees, expenses (including expert witness expenses), and costs.

5

## COUNT II: Retaliation and/or Interference Under the ADA

45.     Stoczynski re-alleges paragraphs one through thirty as if fully alleged here.

46.     Stoczynski was, at all relevant times, a qualified individual with a disability, as that term is defined by the ADA.

47.     Stoczynski was subjected to unwelcome harassment, as more fully described above.

48.     Stoczynski reported the harassment and asked for a reasonable accommodation (separation from the harassers and/or reasonably unimpeded intermittent leave when experiencing severe symptoms of his conditions).

49.     The harassment occurred because Stoczynski had reported the harassment and/or was aimed at interfering with Stoczynski's exercise and enjoyment of rights under the ADA (obtaining a reasonable accommodation).

50.     The harassment was severe or pervasive enough that a reasonable person in Stoczynski's position would find Stoczynski's work environment to be hostile or abusive.

51.     At the time the harassment occurred, Stoczynski believed that it made his work environment hostile or abusive.

52.     Tyson knew of the harassment or should have known about it, but failed to take reasonable steps to correct or prevent it.

53.     Tyson failed to separate him from the harassers and furthered the retaliation by penalizing him for taking time off when he needed it due to symptoms triggered by the harassment.

54.     To the extent that allowing Stoczynski to take intermittent leave can be considered a reasonable accommodation, Tyson further interfered with Stoczynski's exercise and enjoyment of it by giving him attendance points.

55.     As a result, Stoczynski was forced to take a leave of absence from which he could not return, given that he would have been required to go back to working with the harassers.

6

56. Tyson's actions and inactions violated the ADA.

57. These violations were intentional and willful.

58. Stoczynski has been harmed by Tyson's violations of federal law—he has lost wages, benefits, and earning power.

59. Stoczynski had to retain an attorney to pursue claims based on these violations.

WHEREFORE, Plaintiff requests that Defendant be held liable, that judgment be entered against it, and that Plaintiff be awarded all damages to which he is entitled, including back pay and lost benefits, prejudgment interest on back pay and lost benefits, reinstatement or front pay, other injunctive relief, other equitable relief including a tax component, attorneys' fees, expenses (including expert witness expenses), and costs.

### COUNT III: Failure to Provide a Reasonable Accommodation Under the ADA

60. Stoczynski re-alleges paragraphs one through thirty as if fully alleged here.

61. Stoczynski was, at all relevant times, a qualified individual with a disability, as that term is defined by the ADA.

62. Stoczynski requested a reasonable accommodation.

63. Tyson failed to provide Stoczynski with a reasonable accommodation by not separating him from the harassers.

64. Tyson also failed to provide Stoczynski with a reasonable accommodation by giving him attendance points for taking time off when he needed it due to the symptoms the harassment triggered, instead of providing him with reasonably unimpeded intermittent leave.

65. Further, Tyson failed to engage in the interactive process by working to find a reasonable accommodation that would separate Stoczynski from the harassment.

66. As a result, Stoczynski suffered severely and was forced to take a leave of absence from which he could not return, given that he would have been required to go back to working with the harassers.

67. Tyson's actions and inactions violated the ADA.

68. These violations were intentional and willful.

69. Stoczynski has been harmed by Tyson's violations of federal law—he suffered severe symptoms of his conditions; he has lost wages, benefits, and earning power; and he has suffered severe emotional distress, which still continues.

70. Stoczynski had to retain an attorney to pursue claims based on these violations.

71. Tyson's conduct was in reckless disregard of Stoczynski's rights. Therefore, Stoczynski requests punitive damages to punish Tyson and to deter Tyson and other companies from engaging in similar discriminatory conduct in the future.

WHEREFORE, Plaintiff requests that Defendant be held liable; and that he be awarded all damages to which he is entitled, including compensatory damages (for physical and mental pain and suffering), punitive damages, back pay and lost benefits, prejudgment interest on back pay and lost benefits, reinstatement or front pay, other injunctive relief, other equitable relief including a tax component, attorneys' fees, expenses (including expert witness expenses), and costs.

## Jury Demand

72. Plaintiff demands a jury trial pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

Respectfully submitted by:

s/Steven J. Molitor

Law Office of Julie O. Herrera
53 W. Jackson, Suite 1615

8

Chicago, IL 60604
Tel: 312-697-0022
Fax: 312-697-0812
smolitor@julieherreralaw.com